UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| OWEN COX, JR. et al, ) | |
|  ) | |
| Plaintiffs, ) | |
|  ) | |
| vs. ) | Cause No. 1:09-cv-435-WTL-DML |
|  ) | |
| THE CITY OF INDIANAPOLIS et al., ) | |
|  ) | |
| Defendants. ) | |
|  ) | |

### ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Before the Court are cross-motions for summary judgment on the Plaintiffs' federal claim (Docket Nos. 51 & 55), as well the Defendants' Motion to Strike (Docket No. 62). These motions are fully briefed, and the Court, being duly advised, now **GRANTS** the Plaintiffs' motion for summary judgment, **DENIES** the Defendants' motion for summary judgment, and **DENIES** the Defendants' motion to strike.

### I. SUMMARY JUDGMENT STANDARD

The fact that the parties have filed cross-motions for summary judgment does not alter the standard set forth in Federal Rule of Civil Procedure 56(c)(2). When evaluating each side's motion the court simply "'construe[s] all inferences in favor of the party against whom the motion under consideration is made.'" *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561-62 (7th Cir. 2002) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary

judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II.  BACKGROUND

The Barrett Law, IND. CODE 36-9-36 to IND. CODE 36-9-39, is a set of state statutory provisions that allows municipalities to finance public-works projects by assessing taxes on the properties that benefit from the projects. Over time, the Barrett Law program became highly unpopular and, according to the Defendants, "[n]o one liked Barrett Law – not the City officials, not the neighborhood organizations, not the general public." Docket No. 56 at 5. This, coupled with the fact that the Barrett Law system provided inadequate funding to upgrade the City of Indianapolis' sewer system, led to an overhaul. In 2005, the City of Indianapolis (the "City") devised the Septic Tank Elimination Program ("STEP") as an alternative to the Barrett Law. Not only was STEP intended to be more popular, it also made financing sewer projects easier. *See id.*

Unfortunately, the transition from the Barrett Law to STEP was not that simple. As of 2005, there were still approximately $4 million of Barrett Law assessments still on the City's

books. The Board of Public Works believed that many of these assessments were a financial hardship, as they were assessed against lower and middle income families. Further, the outstanding assessments and their associated carrying costs imposed a burden on the City. Finally, these outstanding assessments made it impossible to "establish a clear end to Barrett Law financing" and would require an "essential update to the City's information services system." *Id*. at 6. Ultimately, the City-County Council passed Ordinance 107, 2005 (Docket No. 57 Ex. 1), which implemented STEP. The City-County Council then passed Resolution 101, 2005 (Docket No. 57 Ex. 2), which forgave "all assessment amounts . . . established pursuant to the Barrett Law Funding for Municipal Sewer program due and owning from the date of November 1, 2005 forward to the Department of Public Works via the Barrett Law Assessment Bureau." Docket No. 57 Ex. 2 at 2.

The Plaintiffs are individuals who paid their Barrett Law assessments in full. As a result of Resolution 101, 2005, they paid more of their Barrett Law assessments than did their neighbors whose assessments were forgiven. The Plaintiffs initially filed suit in Marion County Superior Court seeking a credit equivalent to the amount of the forgiveness granted by Resolution 101, 2005. *See* Docket No. 1 Ex. 36 at 8. After the Plaintiffs filed an amended complaint, which added a federal Equal Protection claim, the Defendants properly removed the case to federal court.

### III. DISCUSSION

The parties have now filed cross-motions for summary judgment on the Plaintiffs' federal claim. The Plaintiffs do not challenge the amount of the Barrett Law assessment on their properties. Nor do they challenge the constitutionality of Ordinance 107, 2005, or the facial

validity of Resolution 101, 2005. Instead, the Plaintiffs allege only that, as applied to them, Resolution 101, 2005, violates the Equal Protection Clause. Thus, the dispositive question is whether the Defendants' refusal to issue the Plaintiffs a refund or credit in an amount equivalent to the amount of the forgiveness granted by Resolution 101, 2005, violates the Equal Protection Clause.

Neither the United States Supreme Court nor the Indiana Supreme Court have addressed whether a municipality violates the Equal Protection clause when it forgives an outstanding tax assessment owed by one property owner, while refusing to issue a tax refund or credit to a similarly-situated property owner who has paid his or her assessment in full. However, the Indiana Court of Appeals addressed this precise issue in *City of Indianapolis v. Armour*, 918 N.E.2d 401 (Ind. Ct. App. 2009), *reh'g denied*. Although *Armour* is not binding on this Court, it is persuasive.

In *Armour*, the City assessed a group of homeowners under the Barrett Law. *Id*. at 406. The *Armour* plaintiffs paid their Barrett Law assessments in full prior to November 1, 2005. *Id*. at 407. However, as a result of Ordinance No. 107, 2005, and Resolution 101, 2005, many of their neighbors paid significantly less of their Barrett Law assessments. *Id*. The plaintiffs requested a refund from the City. When they were denied they filed suit against the City, alleging, among other things, that "the City's decision not to issue a refund violated the Equal Protection Clause . . . of the United States Constitution." *Id*. at 407-08. The trial court granted the plaintiffs' motion for summary judgment, denied the City's motion for summary judgment, and awarded damages. *Id*. at 408-09.

On appeal, the Indiana Court of Appeals emphasized that summary judgment was granted

only on the plaintiffs' federal constitutional claims. *Id*. at 409.  Accordingly, the "dispositive question [was] whether the City's refusal to issue a refund to the Homeowners in an amount equivalent to the amount forgiven similarly situated [property] owners violated the Equal Protection Clause." *Id*. at 409-10.  The court emphasized that the plaintiffs brought only an as applied challenge, alleging that the forgiveness provision was unconstitutional as applied to them.  *Id*. at 409.

In *Armour*, as well as in the instant case, the appropriate standard of review is rational basis.  "When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to assure that all persons subject to legislation or regulation are indeed being treated alike, under like circumstances and conditions."  *Id* at 410 (internal quotations omitted).  "[W]hen it appears that an individual is being singled out by the government, the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a 'rational basis for the difference in treatment.'" *Id*. (quoting *Engquist v. Oregon*, 128 S.Ct 2146, 2158 (2008)).  In short, "unless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest."  *Id*.  As the court explained, this standard is "especially deferential in the context of classifications made by complex tax laws.  In structuring internal taxation schemes the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation."  *Id*. at 410-11.  "Thus, the level of scrutiny to be applied . . . is whether the City's decision rationally furthers a legitimate state interest."  *Id*. at 411.

5

The court of appeals noted the existence of several United States Supreme Court cases and opined that *Allegheny Pittsburgh Coal Co. v. County Commission of Webster County, West Virginia*, 488 U.S. 336 (1989), was the most relevant. *Armour*, 918 N.E.2d at 411. In *Allegheny*, the United States Supreme Court "considered whether a county assessor's method of assessing property taxes violated a landowner's equal protection rights." *Armour*, 918 N.E.2d at 411. The Webster County tax assessor valued "recently sold real property on the basis of its recent purchase price while assessing similar property according to a previous assessment, with minor modifications." *Id*. (citing *Allegheny*, 488 U.S. at 338). This resulted in "'gross disparities in the assessed value of generally comparable property.'" *Id*. (quoting *Allegheny*, 488 U.S. at 338). The Supreme Court "held that the disparate treatment by West Virginia's nonuniform application of its property tax law violated the Equal Protection clause." *Id*. (citing *Allegheny*, 488 U.S. at 344). Accordingly, "the State was required by the Constitution to refund to the complaining property owners an amount that would place them on equal footing with those property owners who benefited [sic] from the State's disparate treatment." *Id*. (citing *Allegheny*, 488 U.S. at 346).

The Indiana Court of Appeals also noted that "there are at least three state supreme court cases directly on point." *Id*. at 412. The most relevant of these is *Armco Steel Corp. v. Department of Treasury*, 358 N.W.2d 839 (Mich. 1984). In *Armco Steel*, "the Supreme Court of Michigan held unanimously that a State agency 'failed to suggest any persuasive rational basis justifying its disparate treatment of those corporate taxpayers who paid their . . . assessments . . . and those who did not.'" *Id*. (quoting *Armco Steel*, 358 N.W.2d at 843). "The *Armco Steel* Court concluded that the 'relevant class to be considered in analyzing the plaintiffs' equal protection challenge' is the whole group that was assessed the tax.'" *Id*. (quoting *Armco Steel*, 358 N.W.2d

at 843). "The Court then held that it was contrary to the Equal Protection Clause for the State agency to subdivide that class into those who timely paid and those who did not, and then forgive the unpaid assessments for the untimely taxpayers without extending a refund to the timely taxpayers." *Id*. (citing *Armco Steel*, 358 N.W.2d at 843-44). After reviewing decisions from Florida and Kansas, the Indiana Court of Appeals concluded that "the Equal Protection Clause allows broad discretion to state authorities in the creation and administration of a scheme of taxation, and a state authority's disparate treatment of similarly situated taxpayers will be found unconstitutional only if irrational, arbitrary, or capricious." *Id.* (citing *Fitzgerald v. Racing Ass'n of Cent. Iowa*, 539 U.S. 103, 108 (2003)). "[F]or the purposes of forgiving an outstanding tax debt, a state authority acts arbitrarily when it differentiates between similarly situated, and identically assessed, taxpayers solely on the basis of those who have fully paid their debt and those who have not." *Id*. at 413.

The *Armour* court then turned to the Equal Protection analysis and stated that "[t]he 'relevant class to be considered in analyzing the plaintiffs' equal protection challenge' is the whole group that was assessed the tax.'" *Id*. (quoting *Armco Steel*, 358 N.W.2d at 843). Thus, in the instant case, the relevant classification includes all of the property owners whose properties were assessed to fund the sewer project at 71st Street and Hague Road. The City, however, contends that the Plaintiffs are not similarly situated to homeowners who had not paid their Barrett Law assessments in full before November 1, 2005, for two reasons. First, the City argues that the Plaintiffs "carried no balances" requiring continuing administration. Docket No. 56 at 15. Second, the City claims that the Plaintiffs are not similarly situated because they are not "low-income families." *Id*.

"The City's first argument is not supported by legal authority. Rather . . . the relevant classification for equal protection purposes is all the property owners in the group subject to the same . . . Barrett Law assessment." *Armour*, 918 N.E.2d at 413. As the court of appeals explained, "[t]he City cannot avoid an equal protection claim by subdividing the class and, in effect, re-defining the class as those who carried no balances requiring continued administration by the City." *Id*. (internal quotations omitted). Not only does the City ignore Supreme Court case law, but it also "makes an irrational factual distinction." *Id*. The City's second argument fares no better. There is absolutely nothing in the record indicating that the Plaintiffs are not lower to middle income property owners. "As such, this argument does not present a plausible reason for the disparate treatment within the class." *Id*. at 414.

In short, the fact that the Plaintiffs paid their Barrett Law assessments in full before November 1, 2005, "is, unless justified by the City, an arbitrary basis for deciding who does and does not benefit from the City's amnesty and forgiveness of that debt." *Id*. "All persons within the class who are similarly situated for purposes of the assessment must be subject to the same ultimate liability for collection, unless the City has a rational basis related to a legitimate state interest to treat those persons differently." *Id*. "Just as the costs of the Barrett Law project were 'apportioned equally among all abutting lands or lots,' so, too, must be the forgiveness privileges conferred upon the [Plaintiffs]." *Id*. (quoting IND. CODE 36-9-39-15(b)(3)).

Having determined the relevant classification, the Court must next consider "whether the City's disparate treatment of the [Plaintiffs] is plausibly related to and not attenuated from, the Resolution's expressed policy justification." *Id*. (internal quotations and punctuation removed). "To determine whether the City's disparate treatment of the [Plainitffs] has a rational relation to

a legitimate governmental interest, [the Court] consider[s] the text of the Resolution." *Id.* "[W]hen the text of a law 'specifically declare[s] [its] purpose, the [law leaves] no room to conceive of any other purpose for [its] existence.'" *Id.* (quoting *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 530 (1959)). As part of this review the Court considers "'legislative findings' if any exist, so long as those findings may 'rationally . . . have been considered to be true by the governmental decisionmaker.'" *Id.* (quoting *United States v. Lopez*, 514 U.S. 549, 562-63 (1995)).

The first justification for Resolution 101, 2005, is that the transition from Barrett Law to STEP will reduce the financial hardship faced by lower and middle income families. *See* Docket No. 57 Ex. 2 at 2. The second rationale underlying Resolution 101, 2005, is that, considering current assessments and future needs, the transition from Barrett Law to STEP will reduce administrative carrying costs. *See id.* Neither of these justifications are rationally related to a legitimate state interest.

The first rationale "is clearly a valid policy reason to transition from one funding program to another." *Armour*, 918 N.E.2d at 415.

> But the [Plaintiffs] do not challenge the City's decision to move from the Barrett Law to STEP. Rather, the [Plaintiffs] challenge whether the City can apportion costs equally among similarly situated property owners and then forgive outstanding assessments on an arbitrary date without refunding an equivalent amount to those property owners who had already paid the assessment in full as of that date.

*Id.* Interestingly, "neither the Resolution's findings nor its forgiveness provision address the City's decision not to issue a refund to the [Plaintiffs]." *Id.* "[T]he City has shown no nexus between the City's transition to STEP and its decision not to issue a refund to those [Plaintiffs] who had already paid their Barrett Law assessments in full as of November 1, 2005. Rather,

9

there is a remarkable disconnect between those two decisions." *Id*. In short, "[t]he Resolution states that the plan to discontinue the Barrett Law method of funding considered current unpaid assessments, but the Resolution is silent with respect to any consideration given to the fully paid assessments." *Id.*

> If the City's financial model did not account for the return of the fully paid assessments, that failure is not a rational basis for denying the [Plaintiffs] their constitutional rights. In other words, the financial model is not a policy justification in itself but merely reflects underlying policy choices. The question is not whether the financial model supports the transition to STEP but whether the policy enacted by the City, which results in such grossly disparate treatment of the [Plaintiffs], can withstand constitutional scrutiny.

*Id*. at 416.

Although a State's "use of classification to protect 'legitimate expectation and reasonable reliance' interests provides 'an exceedingly persuasive justification' for those classifications . . . here, the Resolution is *contrary* to the [Plaintiffs'] legitimate expectation and reasonable reliance interests." *Id*. (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 13 (1992)) (emphasis added). The Plaintiffs "had the legitimate expectation that all property owners subject to the same assessment would paid the same amount, either outright or in installments." *Id*. "But rather than collecting all of an equal assessment, the City opted to forgive the rest, distinguishing property owners who had already paid their assessments in full by an arbitrary date." *Id*. at 416-17. In short, "the City offers attenuated justifications for its failure to treat the similarly situated [Plaintiffs] with rough equality." *Id*. at 417. "The City cannot lawfully confer privileges upon those property owners who chose to pay their Barrett Law assessments in installments and, at the same time, impose liabilities upon those property owners within the same class who, at the City's invitation, paid their assessments in full." *Id*. This justification "bears no rational relation to the [Plaintiffs']

equal protection claim." *Id*.

The Defendants' second justification – that Resolution 101, 2005, was enacted to minimize administrative carrying costs – fares no better. "[T]here is no evidence or suggestion that the cost to collect the outstanding and unpaid assessments from participants in active Barrett Law projects would be greater than the amount collected." *Id*. at 418. Furthermore, "the City's professed concern with the costs of continued administration as a policy justification for disparate treatment is irrational because, under the Resolution, no further administration is required of *any* assessment, whether partially paid or fully paid." *Id*. (emphasis added).

> Even if the administrative costs justification were plausible . . . the only course of conduct consistent with equal protection would be for the City to forgive the assessments for the whole group of property owners who were assessed, including the [Plaintiffs], in a manner that would attain, at a minimum, rough equality within the group.

*Id*. "[T]he City did not take any steps to treat the [Plaintiffs] in a manner even roughly equivalent to their similarly situated neighbors." *Id*. In short, there is nothing indicating that the objective of avoiding the costs of "'continued administration' of outstanding Barrett Law accounts is plausibly related to [the City's] refusal to issue a refund check to each of the [Plaintiffs]." *Id*. "There is no plausible correlation between the City's goal of minimizing administrative costs and the disparate treatment of the [Plaintiffs] under the Resolution." *Id*.

To the extent that the Defendants argue that "the forgiveness provision is rationally related to [the City's] need for a clear line of demarcation between the two sewer-funding programs," this argument also fails. *Id*. Again, there is nothing indicating that this justification is "plausibly related to the City's refusal to issue a single refund to the [Plaintiffs]." *Id.* at 419.

The Plaintiffs "have not been treated alike in the privileges conferred upon similarly

11

situated property owners." *Id*. at 419.  "The policy reasons and legislative facts as expressed in the Resolution bear no rational relationship to the City's exclusion of the [Plaintiffs] from the forgiveness provision." *Id*.  Accordingly, having considered all of the parties' admissible evidence in the light most favorable to the Defendants, and having reviewed the persuasive (but non-binding) decision in *Armour*, the Court believes that "the City's differential tax treatment of the [Plaintiffs] violates the Equal Protection Clause." *Id*.  Thus, the Plaintiffs' Motion for Summary judgment is **GRANTED**.

The Plaintiffs also moved for summary judgment requesting prejudgment interest.  *See* Docket No. 52 at 16-17.  Having found a violation of the Equal Protection clause, the Plaintiffs are indeed entitled to prejudgment interest.

## CONCLUSION

For the foregoing reasons the Plaintiffs' Motion for Summary Judgment (Docket No. 51) is **GRANTED**.  The Defendants' Motion for Summary Judgment (Docket No. 55), and the Defendants' Motion to Strike (Docket No. 62) are both **DENIED**.

SO ORDERED:   06/14/2010

_William T Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Stephen Jerome Hyatt
Hyatt & Rosenbaum, P.A.
sjhyatt@juno.com

Edward F. Kelly
Edward F. Kelly Law Office

kellyatlaw@aol.com

Justin F. Roebel
City of Indianapolis, Office of Corporation Counsel
jroebel@indygov.org

William T. Rosenbaum
Hyatt & Rosenbaum, P.A.
rosenbaum@iquest.net