UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| OWEN COX, JR. and EVELYN COX, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:09-cv-0435-TWP-MJD |
| | ) | |
| THE CITY OF INDIANAPOLIS, INDIANA, | ) | |
| THE INDIANAPOLIS DEPARTMENT OF | ) | |
| PUBLIC WORKS, and MARY TRICE, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON THE ISSUE OF DAMAGES**

On June 14, 2010, this Court found that the City of Indianapolis' refusal to issue the Plaintiffs refunds in an amount equivalent to the amount of forgiveness granted by Resolution 100,2005 violated principles of equal protection. The Court ordered the City to issue refunds to Plaintiffs equal to the difference between the taxes paid and the amount paid by taxpayers who subsequently had their remaining balances forgiven. The parties are unable to arrive at a consensus as to the damages calculation, and have called upon the Court to answer two questions. Each is addressed in turn below.

**A. What should be included in the refund amount?**

To resolve this question, a very brief and simplified factual backdrop is instructive. Plaintiffs (hereinafter "Homeowners"), filed a class action suit challenging Defendants' (hereinafter "City"), decision to forgive certain Barrett Law sewer tax assessments and not provide refunds to those who had already paid their assessments in full. When Barrett Law assessments were abolished through Resolution No. 101,2005, taxpayers making payments in installments received forgiveness for "all [Barrett Law] assessment amounts…due and owing

from the date of November 1, 2005 forward…". By contrast, Homeowners – taxpayers who opted to pay their assessments in full in lieu of in installments – received no benefit from the Barrett law forgiveness. This Court has already determined that the City's forgiveness scheme ran afoul of Homeowners' equal protection rights because they did not receive a refund "in an amount equivalent to the amount forgiven similarly situated property owners." (Dkt. 66 at 5 and Dkt. 95 generally).

One sticking point in the damages calculation is whether the City's forgiveness of <u>delinquent</u> amounts owed should be included in Homeowners' damages. Not surprisingly, Homeowners contend that this amount is an appropriate component of damages. The City, of course, sharply disagrees, arguing that the inclusion of delinquent amounts artificially inflates the damages calculation. Stated differently, Homeowners contend that each member of the class deserves a refund based on the *average* amount of forgiveness granted within each Barrett Law project. The City argues that refunds should be based on the benefit Homeowners would have received if they had not pre-paid their Barrett Law tax assessments. The parties' dispute is far more than a rounding error. Homeowners calculate damages as $3,249,233.22, whereas the City calculates damages as $2,783,702.59.

The City argues that delinquent payment forgiveness should not be considered "because it would result in unequal treatment of the non-party homeowners who received no benefit from forgiveness of delinquent amounts." (Dkt. 98 at 3). In other words, if delinquent payments are factored in, homeowners who were behind in their assessment payments will be *better off* than the non-class property homeowners who received forgiveness but were current on their payments (i.e. not delinquent). The City's proposal would put all taxpayers on equal footing – aside from the outlier delinquent taxpayers. To further bolster its position, the City cites *Bunce v. United*

*States*, 28 Fed. Cl. 500, 509-10 (Fed. Cl. 1993), for the proposition that a government entity is permitted to forgive uncollectable taxes without violating the equal protection rights of other taxpayers.

Homeowners argue that averaging the forgiveness granted to owners by Resolution No. 101,2005 within each Barrett Law project area is the fair and correct methodology for determining the damages claim of each member of the class. Homeowners also argue that *Bunce* does not apply, as the City's blanket forgiveness of all outstanding Barrett Law assessments was more akin to "interpretive discretion" discussed in the case, and that once the forgiveness decision was made, "*it must be applied equally to all taxpayers.*" *Id*. (Emphasis added; citation omitted.)

The arguments of both parties are well-crafted. The Court, however, believes that excluding forgiven delinquent taxes from the calculation best fulfills this Court's previous holding because it places the Homeowners in the same position as the timely paying, non-party installment payers. If the Court considered delinquent payment forgiveness for damages, Homeowners would be put in a significantly better place than the average non-party homeowner whose account was current at the time of forgiveness. Finally, governments have a legitimate interest in preserving their limited resources when granting benefits. See *City of Indianapolis v Armour,* 946 N.E. 2d 553, 560 (Ind. 2011).[1] Although neither proposal is perfect, the Court believes that the City has offered the better methodology, one that would put the majority of Homeowners on equal footing.

---

[1] The Court is mindful that the Indiana Supreme Court has found that the City "did not violate the Equal Protection Clause of the Fourteenth Amendment because forgiving only the outstanding assessment balances was rationally related to a legitimate government interest." *City of Indianapolis v. Armour*, 946 N.E.2d 553, 556 (Ind. 2011). While Indiana Supreme Court decisions regarding issues of state law are binding on this Court, such decisions are only persuasive authority on matters of federal law – such as the interpretation of the Equal Protection Clause of the U.S. Constitution.

## B. How to calculate prejudgment interest?

A fundamental precept of finance is that a dollar today is worth more than a dollar tomorrow. For this reason, and as the Court's Summary Judgment Order noted, Homeowners are entitled to prejudgment interest. "Prejudgment interest generally is considered compensation for the time value of money and a means of preventing defendants from prolonging litigation and benefitting from the delay." *Allison v. Ticor Title Ins. Co.*, 979 F.2d 1187, 1201 (7th Cir. 1992) (citations omitted). The parties dispute how to calculate prejudgment interest. Homeowners argue that the Court should use the IRS rate for non-corporate overpayment and underpayments of federal taxes. The City believes that a better measure is the rate the City would have paid for an unsecured loan.

The Court has wide latitude in selecting the appropriate interest rate index. "Unlike post judgment interest, there is no statutory rate of prejudgment interest." *Cement Division, National Gypsum Company v. City of Milwaukee*, 144 F.3d 1111, 1114 (7th Cir. 1998). Courts often use the prime rate because it is "a readily ascertainable figure which provides a reasonable although rough estimate of the interest rate necessary to compensate plaintiffs not only for the loss of the use of their money but also for the risk of default." *Gorenstein Enters v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989). The Seventh Circuit, however, has recognized that a lower rate may be appropriate in instances where there is not a significant risk of default.

The Court believes that the City's approach is fairest and best aligns with the case law. *See id.* at 437 ("[A] more precise estimate would be the interest rate paid by the defendant for unsecured loans."). The evidence shows that the City's bonds have been a reliable investment throughout the recent economic downturn. The City's chances of defaulting are practically non-

existent. *See id.* at 436 ("The plaintiff is an unsecured, uninsured creditor, and the risk of default must be considered in deciding what a compensatory rate of interest would be."). Further, with regard to municipalities, the Seventh Circuit has specifically observed it is permissible to calculate prejudgment interest based upon the municipal rates which lenders would charge to a city for short-term, unsecured loans. *See Cement Div. v. City of Milwaukee*, 31 F.3d 581, 587 (7th Cir. 1994).

Moreover, the Court's decision is reinforced by the nature of the harm suffered by Homeowners. In effect, this case involves extending a tax assessment forgiveness *windfall*, which will be paid by taxes levied on all of the City's taxpayers. Finally, both parties agree that Homeowners are entitled to compound interest. Homeowners request monthly compounding, whereas the City believes that annual compounding is appropriate. The Court in its discretion agrees with the City; therefore, interest shall be compounded on an annual rate.

For the reasons set forth above, the Court rules in favor of the City with respect to the method for calculating the refund amount, and with respect to the method for calculating prejudgment interest.

SO ORDERED.

Date: 06/15/2011

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution attached.

Distribution to:

Jennifer Lynn Haley
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
jhaley@indy.gov, bdoyle@indy.gov

Stephen Jerome Hyatt
HYATT & ROSENBAUM PA
sjhyatt@juno.com, apatterson8@sbcglobal.net

Edward F. Kelly
EDWARD F. KELLY LAW OFFICE
kellyatlaw@aol.com

Justin F. Roebel
CITY OF INDIANAPOLIS, OFFICE OF CORPORATION COUNSEL
jroebel@indygov.org, mohaver@indygov.org

William T. Rosenbaum
HYATT & ROSENBAUM, P.A.
rosenbaum@iquest.net, hyattandrosenbaum@gmail.com